UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MANASSEH B. OGUNSUSI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:05-CV-359-TS |
| | ) | |
| SCOTT STRAUB et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

This case concerns allegations of excessive force the Plaintiff, Manasseh Ogunsusi, has brought against three police officers, Todd Hughes, Daniel Ingram, and Scott Straub. The Plaintiff filed his Complaint on September 16, 2005. Defendants Hughes and Ingram filed for summary judgment on the claims against them on July 20, 2006, arguing there is no allegation they used force and that the facts alleged do not justify liability for failing to intervene. The Defendants also claim qualified immunity. The Plaintiff responded on September 11, 2006, and the Defendants replied on October 2, 2006. For the reasons stated below, the Court denies the Defendants' motion for summary judgment.

**A.    Standard for Summary Judgment**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party."

*Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). After adequate time for discovery, summary judgment must be given against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

 A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

 Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.

Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**B.     Material Facts**

Resolving all genuine disputes and drawing all reasonable inferences in the Plaintiff's favor, the following facts are presumed true for the purposes of this Opinion.

On July 21, 2004, the Plaintiff was working at his job at the Fort Wayne Foundry on Lima Road. While at work, he received a call from his brother Aderemi Ogunsusi, who told the Plaintiff that somebody had shot at his house and asked the Plaintiff to come pick him up. Aderemi lived at 4119 Reed Street, which was about 5 minutes from the Plaintiff's home. The Plaintiff got off of work around 11 p.m. and drove to his home at 3615 Robinwood, which was about fifteen minutes from his work. When he got home he changed his shoes and left to go see his brother Aderemi.

The Plaintiff drove to a gas station on the corner of Anthony Boulevard and McKinnie Street to buy gas. While at the gas station, he received another call from his brother, who said he had left his house. His brother soon arrived at the gas station, and told the Plaintiff he was leaving. The Plaintiff waited at the gas station in his car. He received another call from his brother, who said a house on Holton Street had been shot at. His brother was shaken up, and the Plaintiff believed somebody was trying to hurt his brother.

He left the gas station and drove to Holton Street. When he arrived, there were lots of people standing in front of a house. He recognized his brother and some of his neighbors in the crowd. The Plaintiff drove by the house and parked his car about six houses down from the house on Holton. He walked down the sidewalk back toward the group of people.

While walking down the street, the Plaintiff noticed two police cars, one marked and one unmarked. The unmarked car stopped and an officer opened the door and said "Hey you." He then told the Plaintiff to stop.

4

The Plaintiff stopped on the sidewalk. The gathering of people was about two houses away. Three or four uniformed officers approached the Plaintiff. One officer stood in front of the Plaintiff, one officer was on his left, another was on his right, and one was behind him. The officer in front of him asked him if he had a gun. The Plaintiff responded that he had a license to carry a firearm. The officer told him to put his hands up and the Plaintiff complied. The officer reached under his shirt and pulled the gun from the Plaintiff's waistband. The gun was a loaded Intratec 9mm.

After removing the handgun, the Plaintiff asked the officer what was going on. The Plaintiff describes what happened next: "I seen him looking like, he's standing in front of me, so I'm looking at him with my hands up, and I could see that he was looking at somebody like from behind me. Once he received the firearm, I was kicked down to the ground while my hands were up." (Pl. Dep. 26, DE 30-2.) Explaining further, the Plaintiff stated, "[W]hile my hands were up and I was cooperating and talking with [the officer in front], I noticed that someone was behind me, just by the expression on the officer's face in front of me. I didn't dare turn around because I don't believe that's a smart thing to do. I was only speaking with one officer. And I felt a kick to the back and I went down to the ground." (Pl. Dep. 27, DE 30-2.) The Plaintiff also submitted an affidavit restating what happened, except he adds the additional statement that after the officer in front of him removed the weapon from the Plaintiff's waistband, the Plaintiff "noticed the officer in front of me and to the side looking at someone behind me as if to give him a signal. Almost immediately I was struck from behind—someone had kicked me and I fell forward." (Pl. Aff. 1–2, DE 30-4.) After he fell to the ground, he felt a slight hit to the left side of his face, causing swelling. An officer put his knee on the Plaintiff's back and handcuffed him. He was then put

into the back of a squad car.

The Plaintiff went to the hospital emergency room for treatment of his back. He later went to Fort Wayne Orthopaedics for treatment. He has continuous pain in his lower back.

According to the Plaintiff, he "cooperated with the officers. [He] didn't get smart with the officers." (Pl. Dep. 64, DE 27.) He did everything the officers ordered. He put his hands up, told them of his weapon, and did not argue or raise his voice.

Officer Ingram states he was the officer who was ordered the Plaintiff to stop and put his hands on his head. He states he retrieved the gun from the Plaintiff's waistband. Straub states he kicked the Plaintiff in the back, causing him to fall forward. Straub states that Hughes assisted him in taking the Plaintiff down. The Defendants do not agree with the Plaintiff's account of his conduct or that the Plaintiff was cooperative and responsive to the officers' demands. However, in deciding the motion for summary judgment, the Court resolves factual disputes in the Plaintiff's favor.

**C.     Standard for a Section 1983 Claim Alleging Excessive Force**

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). Judging from the perspective of a reasonable officer present on the scene, if an officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them," the actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment

6

interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must look to the following factors when determining whether the amount of force used is reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003).

An officer who fails to prevent other law enforcement officers from violating the constitutional rights of citizens can be held liable under § 1983 if that officer had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994)).

**D.     Sufficiency of Evidence to Support Claims Against Ingram and Hughes**

The Defendants admit, and the Court agrees, that under the facts alleged by the Plaintiff, Straub's kick to the Plaintiff's back was an unreasonable use of force. The Defendants argue that the claims against Ingram and Hughes should be dismissed because there is no evidence they

7

used any force and because they did not have a realistic chance to intervene to prevent Straub's kick.

The Plaintiff argues that Ingram or Hughes acted in concert with Straub by signaling to Straub before he kicked the Plaintiff. No evidence has been submitted regarding the identity of the person who struck the Plaintiff's face, and the Plaintiff does not argue that it was Ingram or Hughes.

The Plaintiff states he "noticed the officer in front of me and to the side looking at someone behind me as if to give him a signal. Almost immediately I was struck from behind." (Pl. Aff. 1–2, DE 30-4.)  The Defendants argue that the Plaintiff's characterization of the officers' looks as signals is speculation. However, the Plaintiff is testifying as to his own observations and his characterization of the officers' looks is rationally based on his perception. A reasonable jury could infer from the context of the situation and the fact that the Plaintiff received a kick to the back after the officers' signal that the purpose of the signal was to indicate that Straub should take down the Plaintiff.

The Defendants also argue that the kick was so fast the officers could not have had reasonable time to prevent it. However, the Court cannot say that, considering all the evidence in a light most favorable to the Plaintiff, a reasonable jury could only conclude that the officers did not have time to stop Straub from kicking the Plaintiff. Ingram and Hughes were standing next to the Plaintiff and were looking at Straub before he delivered his kick to the Plaintiff. According to the Plaintiff's account, the officers said and did nothing to stop Straub or warn the Plaintiff. Taking the evidence to favor the Plaintiff, they could have at least called out to Straub to stop or warned the Plaintiff. The Plaintiff received a strike to the face after being kicked to the ground.

8

After the kick, Ingram and Hughes may have had time to prevent the additional blow. Also, if a jury believed the Plaintiff's assertion that the officers looked to Straub as a signal, it could conclude that the officers were tacit collaborators in Straub's kick to the Plaintiff's back.

### E.	Standard for Qualified Immunity

Government officials, including police officers, are protected by the doctrine of qualified immunity for actions that could have been reasonably believed to be lawful in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The reasonableness of an officer's belief that his actions are legal depends on how clearly established the law is governing the officer's particular action. An officer's belief in the lawfulness of his conduct is reasonable unless pre-existing law makes the unlawfulness of the conduct apparent. *Id.* at 639–40. Even if an officer acts unlawfully, qualified immunity applies if the officer's mistake was reasonable. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

The Supreme Court has outlined a two step process to determine whether qualified immunity applies. *Id.* at 200. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the facts show a violation of a plaintiff's constitutional rights, the court must then ask whether the specific right violated was so clearly established at the time of the conduct that the officer's mistake was unreasonable. *Id.* at 201–202. It is the plaintiff's burden to show a defendant's conduct violated clearly established law, and he may do so by offering closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *Casteel v. Pieschek*, 3 F.3d

1050, 1053 (7th Cir. 1993). If relying on caselaw, it is not necessary for a plaintiff to find a prior case with nearly identical facts; the plaintiff must produce case law showing the state of the law at the time of the officers' conduct was such that they had fair warning their conduct violated the Constitution. *See Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005).

The Court held above that, taking the Plaintiff's assertions to be true, the facts alleged show that the officers violated the Plaintiff's constitutional rights. The question left to be answered is whether the right violated was so clearly established at the time of the conduct that the officers' mistakes were unreasonable.

### F.     Whether the Defendants Are Entitled to Qualified Immunity

The Defendants argue that the officers are entitled to qualified immunity because the Plaintiff cannot show that it would have been clear to a reasonable officer that kicking the Plaintiff was unlawful under the circumstances alleged by the Plaintiff. The Defendants argue the force used was minimal, the Plaintiff had been armed and was suspected of having additional firearms, a large crowd of people had gathered in the area, and the Plaintiff was a suspect in the shooting.

The Court does not agree that these factors are sufficient so that a reasonable officer could have thought Straub's kick to be lawful. The Plaintiff does not offer a case with similar facts, but argues the Defendants' conduct was so obviously a violation of the Constitution that a reasonable officer would have known this. As argued by the Plaintiff, it is clearly established that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996).

In the account given by the Plaintiff, he did nothing to provoke the police and did nothing that would have made a reasonable officer think the Plaintiff was a threat. According to the Plaintiff, he answered the Defendants' questions, put his hands up, and told them he was armed. The Defendants removed his gun. The Plaintiff then asked what was going on. At this point, a reasonable officer in the shoes of the Defendants would have known it would be unreasonable to use any force to subdue the Plaintiff. The Defendants had time to assess the situation at the location and consider whether the Plaintiff posed a threat. The Plaintiff was willing to cooperate and stood with his hands up. Three officers surrounded the Plaintiff. Nothing prevented the officers from frisking the Plaintiff, handcuffing the Plaintiff, or ordering the Plaintiff to lay on the ground or against a car. Though the officers might have suspected the Plaintiff was still armed, according to the Plaintiff's account, there was nothing that would have made a reasonable officer think force was necessary to subdue the Plaintiff.

Because all three officers were present to observe all of the Plaintiff's conduct, all three officers had sufficient knowledge to determine that using force would violate the Plaintiff's rights. Qualified immunity therefore does not apply to protect Straub from liability for his takedown of the Plaintiff or to protect Hughes and Ingram from liability for their failure to intervene.

### G.    Conclusion

The purpose of summary judgment is to determine whether there is sufficient evidence for a case to be presented to a jury. The Court does not examine the credibility of the witnesses or the weight of the evidence, and must construe all facts and take all reasonable inferences to

favor the nonmoving party. In this case, there are two very different stories of what happened on July 21, 2004, and it will be the jury's task to determine whose version is accurate.

## ORDER

For the reasons stated above, the Defendants' motion for summary judgment [DE 26] is DENIED.

SO ORDERED on October 31, 2006.

/s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
